IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

VIIV HEALTHCARE COMPANY, )
SHIONOGI & CO., LTD. and VIIV )
HEALTHCARE UK (NO. 3) LIMITED, )
                              )
          Plaintiffs, )    C.A. No. 18-224 (CFC) (CJB)
                              )
     v. )
                              )
GILEAD SCIENCES, INC., )
                              )
          Defendant. )

## GILEAD SCIENCES, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION UNDER D.I. 205 FOR LEAVE TO SERVE SUPPLEMENTAL AND SUR-REPLY EXPERT REPORTS

OF COUNSEL:

Adam K. Mortara
J. Scott McBride
Mark S. Ouweleen
Matthew R. Ford
Nevin M. Gewertz
Tulsi E. Gaonkar
Rebecca T. Horwitz
Madeline W. Lansky
Bartlit Beck LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400

Meg E. Fasulo
Bartlit Beck LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
(303) 592-3100

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Defendant*
*Gilead Sciences, Inc.*

Nao Takada
Takada Legal, P.C.
112-01 Queens Blvd.
Forest Hills, NY 11375
(212) 380-7804

**Confidential Version Filed: March 26, 2020**

**Public Version Filed: April 9, 2020**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... ii

BACKGROUND ...................................................................................4

ARGUMENT .......................................................................................6

LEGAL STANDARD............................................................................6

I.    Gilead Should Be Permitted To Supplement Three Expert Reports To Discuss Newly Published Articles Addressed In ViiV's Reply Reports ........8

    A.    The Newly Published Articles Are Highly Relevant To Bictegravir's Non-Infringement Of The Asserted Patent ...........................................8

    B.    ViiV Will Not Suffer Any Prejudice From The Supplements............12

II.    Gilead Should Be Permitted To Supplement One Expert Report To Address A Recent Presentation At The Premier HIV Conference, CROI .................13

III.    Gilead Should Be Permitted To Provide Two Sur-Reply Reports On Questions Related To Noninfringement........................................................15

IV.    Gilead Should Be Permitted To Serve A Sur-Reply From Its Damages Expert To Address The Flawed Analyses Introduced By ViiV's New Damages Expert In Reply..............................................................................18

    A.    Dr. Vellturo's Sur-Reply Explains The Flaws In Dr. Simcoe's New Instrumental Variables And New Simulation .....................................18

    B.    Dr. Vellturo's Sur-Reply Explains The Reliability Of His Model .....20

    C.    ViiV Is Not Prejudiced By Dr. Vellturo's Sur-Reply .........................21

CONCLUSION ..................................................................................22

i

<u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Novartis Pharm. Corp. v. Actavis, Inc.*,
   No. 12-366-RGA-CJB, 2013 WL 7045056 (D. Del. Dec. 23, 2013) ............... 6-7

*TQ Delta, LLC v. 2Wire, Inc.*,
   No. 13-1835-RGA, 2019 WL 1529952 (D. Del. Apr. 9, 2019) ............................7

**Rules**

Fed. R. Civ. P. 26(a)(2)(D) ..........................................................................................7

Fed. R. Civ. P. 26(e).......................................................................................... 7, 19

Fed. R. Civ. P. 37(c)(1)...........................................................................................7

This case involves a dispute between ViiV Healthcare, Shionogi, and ViiV Healthcare UK (collectively "ViiV") and Gilead Sciences. Gilead and ViiV both market a type of anti-HIV medication called an integrase strand transfer inhibitor (INSTI). ViiV alleges that Gilead's INSTI (bictegravir) infringes ViiV's patent covering its own INSTI (dolutegravir) under the doctrine of equivalents. A central question is whether bictegravir is "insubstantially different" from ViiV's patented dolutegravir—*i.e.*, whether bictegravir infringes the patent-in-suit under the doctrine of equivalents. ViiV seeks billions of dollars in damages. Gilead moves for leave under the Scheduling Order to supplement certain expert reports with information newly available to Gilead as well as in response to expert opinions provided by ViiV for the first time in reply. D.I. 87.

The most up-to-date research on HIV and its treatment is central to the question of infringement by equivalents. Expert testimony is critically important to answering that question, and the research continues to develop. Both parties have already served opening, rebuttal, and reply reports from multiple experts across various scientific and economic disciplines. Expert discovery has not yet been completed, and further expert depositions have been postponed due to the pandemic. As expert discovery has yet to close, there is no prejudice to anyone if Gilead's expert reports are supplemented with up-to-date science and responses to ViiV's newly disclosed opinions.

To that end, Gilead seeks leave to serve six additional short expert reports, attached to the motion as Exhibits A-F, in response to new scientific developments and new opinions disclosed for the first time in ViiV's reply reports, as set forth in the following sections of this brief:

**Sections I & II. New articles and research presentations.** Gilead seeks to serve supplemental reports from three of its technical experts, Drs. David MacMillan, Charles Reynolds, and Douglas Richman. Since Gilead served its rebuttal reports on the substantial differences between bictegravir and the patented compounds, two new scholarly articles and a new research presentation have been published. Each describes how bictegravir works differently (and better) than dolutegravir—analysis that bears directly on the question of infringement. This information became available after Gilead served its rebuttal reports, and thus Gilead had no opportunity to address it. But both articles were published before ViiV served its reply reports, and ViiV took the opportunity to address them in those reports. (Indeed, ViiV's reply reports spend tens of pages evaluating the articles in an effort to dismiss their conclusions.) Gilead should be granted leave to serve the attached supplemental expert reports to remedy this imbalance, as well as to ensure that the jury can consider the opinions of both parties' experts (not just ViiV's) on these new, highly relevant scientific developments.

**Section III. New opinions submitted in reply.** Gilead proposes sur-reply reports from two of its other technical experts, Drs. Kenneth Morris and David Taft. ViiV disclosed two new technical experts from new disciplines for the first time on reply, each of whom presented new infringement opinions.[1] These new opinions are flawed in both their methodological approach and their conclusions. Gilead seeks the opportunity to address these flaws. ViiV should not be permitted to insulate new opinions from response by failing to disclose them prior to their reply reports.

**Section IV. Damages.** Gilead also proposes a sur-reply report from its damages expert, Dr. Christopher Vellturo. ViiV disclosed a new damages expert in reply who introduces new variables into Dr. Vellturo's model to engineer an opinion that it is unreliable. He does this in an effort to produce unreliable results, which he then uses to argue that Dr. Vellturo's model itself is unreliable. Gilead seeks the opportunity to respond to these new opinions.

*     *     *

The reports will not affect the case schedule. None of the aforementioned experts have been deposed, and all discovery is delayed in light of the COVID-19

---

[1] Gilead could have moved to strike new material included for the first time in reply reports. Given the schedule and the lack of prejudice to both sides in supplementing expert reports (discussed herein), Gilead believes allowing both parties to supplement and sur-reply as needed is the appropriate course and will better serve the interests of justice.

pandemic. Each report is focused and short. And full consideration of the merits favors the jury's consideration of (1) the latest research showing that bictegravir does not infringe ViiV's patent; and (2) Gilead's responses to the new matter ViiV included in its reply reports.

For the reasons that follow, Gilead asks the Court to grant leave to file the expert reports attached to Gilead's motion.

<u>BACKGROUND</u>

Gilead and ViiV both market drugs that treat HIV by preventing the integration of viral DNA into human DNA. These drugs are called integrase strand-transfer inhibitors, or INSTIs. ViiV alleges that Gilead's INSTI product (bictegravir) infringes its patent on its own INSTI product (dolutegravir) under the doctrine of equivalents. A central inquiry on liability is whether Gilead's bictegravir and ViiV's dolutegravir are "insubstantially different."

The case is currently in the middle of expert discovery. The parties have served opening reports, rebuttal reports, and reply reports. A single expert deposition has occurred of a Gilead expert not at issue here. No other expert depositions are scheduled. In light of the COVID-19 pandemic, at the parties' request, the Court vacated the expert discovery deadline of April 17, 2020, and scheduled a status conference for April 22, 2020. D.I. 205. Trial is currently set for September 2020.

The Scheduling Order provides, "No other expert reports will be permitted without either the consent of all parties or leave of the Court." D.I. 87 at 6. Shortly after the exchange of reply reports on February 7th, Gilead asked ViiV to consent to supplemental or sur-reply reports from Drs. MacMillan, Reynolds, Richman, Morris, Taft, and Vellturo, stemming from newly published research bearing on noninfringement, the addition of new opinions in ViiV's reply reports, or both.

The parties were unable to reach agreement. ViiV would have agreed to Gilead's proposed sur-replies (answering ViiV's experts' new opinions) in exchange for two sur-replies of its own. But as a condition, ViiV wanted Gilead to stipulate that "[t]he parties would be free to move to strike experts or arguments, or move in limine, once expert depositions are completed." Ex. G, 3/9/2020 Krause Email to McBride at 1. Gilead recognized that "either party is free to file any motion it wishes within the rules of the Court," but declined to include this language as part of the agreement. Ex. H, 3/10/2020 McBride letter to Krause at 1.

ViiV also agreed to supplemental/sur-reply reports to address the articles published after Gilead's rebuttal reports and discussed in ViiV's reply reports. But ViiV conditioned its agreement there on unworkable limitations as to the reports' scope. *Id.* at 2. Finally, ViiV rejected Gilead's request for a supplement to discuss research presentations at the premier conference on HIV published in early March. Ex. G, 3/9/2020 Krause email to McBride at 1.

## ARGUMENT

Gilead should be permitted to serve the supplemental and sur-reply expert reports attached to Gilead's motion as Exhibits A-F. None of the experts submitting proposed reports have been deposed. The schedule for completing expert discovery is itself in flux because of COVID-19, so these reports will not affect the ultimate case schedule. And absent these additional reports, Gilead will be unable to address important new research or new matters ViiV raised for the first time in its reply reports. Expert discovery is not a rigged game of musical chairs where ViiV gets to address new articles and add brand new types of experts for the first time on reply, and then stop the music giving Gilead no right to respond.

ViiV will not suffer any prejudice from Gilead's supplemental or sur-reply reports. But if Gilead is prevented from serving these reports, ViiV will gain an unwarranted advantage by either keeping the full picture on the latest research from the jury or by using reply reports to insulate new opinions from response by Gilead's experts.

## LEGAL STANDARD

Courts have differentiated between expert reports that address previously unavailable information and those that seek to respond to opposing experts' conclusions in their reply reports. *Novartis Pharm. Corp. v. Actavis, Inc.*, No. 12-

366-RGA-CJB, 2013 WL 7045056, at *7-8 (D. Del. Dec. 23, 2013). Federal Rule of Civil Procedure 26(e) allows parties to supplement for "the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report." *Id.* at 7 (internal quotation marks and citation omitted).

Whether to permit additional expert reports beyond what is set forth in the case schedule or allowed by rule is otherwise governed by Rule 37(c)(1). *TQ Delta, LLC v. 2Wire, Inc.*, No. 13-1835-RGA, 2019 WL 1529952, at *1 (D. Del. Apr. 9, 2019). Rule 37 prohibits disclosures outside of the Court's scheduling order unless the disclosure is "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also* Fed. R. Civ. P. 26(a)(2)(D). Courts conduct this inquiry using the *Pennypack* factors, which examine: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld." *TQ Delta*, 2019 WL 1529952, at *1-2 (citation omitted).

These factors all weigh in favor of allowing each of Gilead's proposed reports. ViiV will suffer no prejudice from these reports, which address matters that were either recently published or are in response to previously undisclosed opinions from ViiV's experts. The reports can be incorporated into the ultimate case schedule emerging from the April 22, 2020, status conference. The

importance of the information in the reports is unquestionable. And Gilead has acted in good faith throughout, first seeking ViiV's consent and then the Court's to submit reports addressing the new matter.

## I.     Gilead Should Be Permitted To Supplement Three Expert Reports To Discuss Newly Published Articles Addressed In ViiV's Reply Reports

After Gilead served its non-infringement rebuttal reports on January 10, 2020, two articles were published in the journal *Science* that describe substantial differences between bictegravir and dolutegravir. Exs. I, J. Given that timing, Gilead could not have addressed the authors' conclusions and data in its rebuttal reports. But by an accident of publication timing, ViiV's experts did—over many pages. Exs. K-M (Drs. Engelman, Merz, Wipf reply reports). Gilead should have an opportunity to address the same articles and particularly ViiV's experts' mischaracterizations of the authors' conclusions. Accordingly, Gilead asks the Court for leave to serve the supplemental expert reports from Drs. MacMillan, Reynolds, and Richman attached to Gilead's motion as Exhibits A-C.

### A.     The Newly Published Articles Are Highly Relevant To Bictegravir's Non-Infringement Of The Asserted Patent

Two contested issues addressed in the parties' expert reports involve (1) crystal structures and molecular modeling; and (2) drug resistance. Crystal structures and molecular modeling reveal how integrase—the enzyme targeted by ViiV's and Gilead's drugs—and drug compounds interact at the molecular level.

8

Drug resistance examines whether mutations to the HIV virus that occur as HIV replicates in the human body can lower a drug's effectiveness. Both topics are important in HIV research and implicate the question of noninfringement.

Two new articles in *Science* provide some of the latest research on both topics. First, Nicola Cook and others published an article describing how dolutegravir and bictegravir bind to integrase from a virus similar to HIV, simian immunodeficiency virus (SIV). Ex. I, Cook et al., *Structural basis of second-generation HIV integrase inhibitor action and viral resistance*, 367 Science 806-810, 1-4 (published online Jan. 30, 2020) ("Cook 2020"). The visual representation of bictegravir and dolutegravir bound with SIV integrase achieved in the authors' experiment is a novel accomplishment. *Id.* Notably, one of ViiV's experts, Dr. Alan Engelman, is named as a corresponding author of this article, and surely had access to drafts and data from the article *well before ViiV served its opening expert reports in November of last year*. But ViiV did not include any Cook 2020 data in its opening reports (or even acknowledge the research's existence). In contrast, Gilead's experts did not have access to the Cook 2020 article before submitting their reports.[2]

_____

[2] One of Gilead's experts, Dr. Reynolds, separately requested and received some of the data underlying the Cook 2020 article from a different co-author, and Gilead's experts then discussed that data and provided it to ViiV (even though ViiV's expert

In the same vein, a second new article from Dario Passos and others describes how bictegravir binds to integrase. Ex. J, Passos et al., *Structural basis for strand-transfer inhibitor binding to HIV intasomes*, 367 Science 810-814, 1-4 (published online Jan. 30, 2020) ("Passos 2020"). Passos 2020 describes how bictegravir is the "most broadly potent of all clinically approved INSTIs" and presents data showing differences in the resistance profiles of bictegravir, dolutegravir, and other INSTIs. *Id.* at 1. It was published at the same time as Cook 2020—after Gilead's experts had submitted their rebuttal reports, but before ViiV's experts submitted their reply reports. Gilead now seeks to submit short reports from Drs. MacMillan, Reynolds, and Richman addressing these articles.

Dr. MacMillan's proposed supplement discusses Cook 2020's conclusion that bictegravir, as a result of its different shape and volume, has closer and more numerous contacts with integrase as compared to dolutegravir—making bictegravir the better drug. Ex. A, MacMillan Suppl. Rpt. ¶ 3. This in turn supports the Cook 2020 authors' (and NIH scientists') conclusion that bictegravir is "better" than and "superior" to dolutegravir in inhibiting known integrase mutants. *Id.* In a case about whether these two compounds are insubstantially different, the jury needs to

---

already had it). But Gilead only had access to some of the data and not the authors' analyses and conclusions.

hear from both sides about this evidence that Gilead's product is not only different but "better" and "superior."

Dr. Reynolds, in his proposed supplement, provides graphical context for the Cook 2020 authors' conclusions about how bictegravir has improved contacts with integrase. Ex. B, Reynolds Suppl. Rpt. ¶¶ 3-11. And Dr. Richman, in his proposed supplement, explains how the Cook 2020 authors' conclusions relate to bictegravir's improved resistance profile over dolutegravir. Ex. C, Richman Suppl. Rpt. ¶ 5. Dr. Richman's proposed supplemental report also explains how Passos 2020 shows that dolutegravir and bictegravir are not cross-resistant and have different activity against particular HIV integrase mutants, which supports the substantial differences between the two molecules. *Id.* ¶¶ 3-4.

Cook 2020 and Passos 2020 provide updated findings that confirm the differences between bictegravir and dolutegravir. ViiV asserts that bictegravir and dolutegravir bind to integrase in the same way. But Cook 2020 shows this is not the case because bictegravir makes closer and greater contacts with integrase. Ex. I, Cook 2020 at 2. Likewise, ViiV alleges that bictegravir has the same effect on mutant viruses as dolutegravir. But Passos 2020 disputes that claim (calling bictegravir the "most broadly potent of all clinically approved INSTIs") and provides new data showing that bictegravir and dolutegravir have different activity against certain HIV integrase mutants. Ex. J, Passos 2020 at 1. Gilead's proposed

supplements situate these authors' conclusions in the context of the parties' dispute.

### B. ViiV Will Not Suffer Any Prejudice From The Supplements

ViiV's only possible claim to prejudice is the loss of an unwarranted advantage brought about by pure luck. If Cook 2020 and Passos 2020 had been published eight days later, both parties would have been required to supplement to address them. Instead, ViiV's expert Dr. Engelman—who as a corresponding author had access to Cook 2020 before his initial report was due—dedicates twenty pages of his reply report to Cook 2020 describing his work with his co-authors. Ex. K, Engelman Reply Rpt. ¶¶ 18-47. Two other ViiV experts discuss both Cook 2020 and Passos 2020 extensively in an attempt to downplay the papers' conclusions because they support Gilead's defense of non-infringement. Ex. L, Merz Reply Rpt. ¶¶ 30-39, 52-56; Ex. M, Wipf Reply Rpt. ¶¶ 104, 108, 110-11, 118, 147-49, 155, 181. Permitting Gilead to address the substance of the articles and also respond to ViiV's experts' arguments does not prejudice ViiV—ViiV's experts have already addressed the articles. But preventing Gilead's experts from responding would be a windfall for ViiV and would prevent the jury from hearing both parties' perspectives on this new scientific evidence.

In addition, the supplements will not impact the case schedule, which will have to be adjusted to take into account the effects of the COVID-19 pandemic.

None of the three experts offering supplements have been deposed or have scheduled depositions. ViiV will have adequate time to evaluate these supplements and prepare.

## II.   Gilead Should Be Permitted To Supplement One Expert Report To Address A Recent Presentation At The Premier HIV Conference, CROI

Gilead also requests leave to include in Dr. Richman's supplement information regarding a recent presentation at the Conference on Retroviruses and Opportunistic Infections (abbreviated "CROI" and pronounced "croy"). *See* Ex. C, Richman Suppl. Rpt. ¶¶ 6-8. CROI is the "preeminent HIV research meeting in the world" and provides an annual forum in which HIV researchers present the latest clinical and laboratory findings on HIV and its treatment. *See About CROI*, CROI, http://www.croiconference.org/about (last visited Mar. 24, 2020). This year the conference was made virtual in light of the COVID-19 pandemic. But the presenters still submitted webcasts, abstracts, and presentations on their HIV research. *See Virtual CROI 2020*, CROI, http://www.croiconference.org/virtual-croi-faq (last visited Mar. 24, 2020). Several of these presentations directly address bictegravir. *See Search Abstracts And Electronic Posters*, CROI, http://www.croiconference.org/abstracts/search-abstracts/ (search in "Abstract Title" for "bictegravir") (last visited Mar. 24, 2020).

Dr. Richman's proposed supplemental report discusses research presented at CROI by Ernesto Cuadra-Foy and others entitled *Bictegravir confers long-term*

*viral suppression against drug-resistant viruses in cell culture* (CROI Poster No. 0534) ("Cuadra-Foy 2020 Poster"). Ex. C, Richman Suppl. Rpt. ¶ 6; Ex. N, Cuadra-Foy 2020 Poster. This presentation provides data showing that bictegravir suppresses particular mutant forms of HIV integrase longer than dolutegravir after treatment is stopped—compelling evidence against ViiV's assertion that the two drugs are insubstantially different. Ex. C, Richman Suppl. Rpt. ¶¶ 6-8; Ex. N, Cuadra-Foy 2020 Poster. Moreover, the presentation offers additional data to support the substantial differences between bictegravir's and dolutegravir's ability to treat mutant integrase. *Id.*

As with the *Science* articles, this presentation was unavailable at the time Gilead served its rebuttal reports. *Virtual CROI 2020 Agenda*, CROI, http://www.croiconference.org/virtual-croi-2020-agenda (agenda for Mar. 8-11, 2020) (last visited Mar. 24, 2020). In addition, the presentation provides some of the latest industry research on the treatment of HIV, which goes to the central question of noninfringement under the doctrine of equivalents.

Balanced against the centrality of this data to the case is ViiV's lack of prejudice. When Gilead sought ViiV's consent to file a supplement regarding research presented at CROI, ViiV's only objection was that it could "unnecessarily slow the schedule and be unduly prejudicial to Plaintiffs to the extent the information was earlier known to, or created by, Gilead." Ex. G, Krause email to

14

McBride at 1. These objections are unfounded. Dr. Richman's proposed supplemental report addresses only a single CROI presentation by researchers from McGill University and the Lady David Institute for Medical Research. *See* Ex. N, Cuadra-Foy 2020 Poster. And Dr. Richman's narrow supplement can be incorporated into any case schedule determined by the Court at the April 22 status conference.

ViiV's claim of prejudice boils down to a complaint that the new data presented is harmful to its case. That is not prejudice. ViiV has had access to the same published information on the same timeline. And even if there were prejudice, it could be cured by ViiV's requesting its own supplement to address this or any other relevant data presented at CROI. Gilead's request should be granted.

## III. Gilead Should Be Permitted To Provide Two Sur-Reply Reports On Questions Related To Noninfringement

Gilead requests leave to serve the attached sur-reply reports from Drs. Morris and Taft to address new opinions raised for the first time in ViiV's reply reports. *See* Exs. D, E.

ViiV submitted reply reports from two new experts, Dr. Stephen Byrn and Dr. Jennifer Dressman, who provided opinions on matters not included in ViiV's opening reports. Ex. O, Dressman Rpt.; Ex. P, Byrn Rpt. Dr. Byrn provided new and previously undisclosed infringement opinions based on infrared spectroscopy,

a tool useful for helping evaluate the molecular structure of a compound. He opines, based on an infrared spectroscopic analysis of bictegravir and dolutegravir, that the compounds' structures are insubstantially different. Ex. D, Morris Sur-Reply Rpt. ¶¶ 2-4. Dr. Dressman provided new and undisclosed infringement opinions regarding the effects that formulation and co-formulation have on the pharmacokinetics of bictegravir. In other words, she provides new opinions on how the process by which bictegravir is incorporated into the final pill a patient takes affects how the body absorbs, distributes, metabolizes, and excretes the drug. Ex. E, Taft Sur-Reply Rpt. ¶ 6 n.2.

Drs. Morris's and Taft's proposed sur-reply reports respond to these new opinions. Dr. Morris's proposed report explains how Dr. Byrn misuses infrared spectroscopy in evaluating bictegravir and dolutegravir. In short, infrared spectroscopy is used to confirm that a specific molecule "is what it is supposed to be"—not to define the differences between two crystal structures. Ex. D, Morris Sur-Reply Rpt. ¶ 5. Dr. Morris also explains that infrared spectroscopy obscures the differences between bictegravir and dolutegravir because the methodology is not sensitive to their types of chemical structures. *Id.* ¶¶ 5-9. This testimony is necessary to avoid giving the jury the mistaken impression that ViiV's late-disclosed methodology is suitable for the infringement inquiry.

Dr. Taft's proposed sur-reply report explains the flaws in Dr. Dressman's analysis. For example, Dr. Dressman states that differences between bictegravir and dolutegravir could be attributed to bictegravir's formulation as opposed to actual difference between the drugs, omitting the fact that dolutegravir's formulation would have been similarly optimized as well. Ex. E, Taft Sur-Reply Rpt. ¶¶ 5-8. She likewise makes methodological errors in her efforts to attribute bictegravir's improved pharmacokinetic profile to other drugs co-formulated with bictegravir. *Id*. Absent a rebuttal, Dr. Dressman's new infringement opinions could create a skewed picture of bictegravir's pharmacokinetic differences from dolutegravir, an important issue regarding noninfringement.

Moreover, ViiV cannot claim prejudice from any response to Drs. Byrn's and Dressman's new opinions. As discussed above, Gilead's sur-replies will not impact the case schedule. And ViiV does not have a protectible interest in the late disclosure of expert opinions. ViiV's six opening expert reports included several sections on the supposed structural similarities between bictegravir and dolutegravir, but none involving infrared spectroscopy. Similarly, ViiV's reports included several opinions regarding the pharmacokinetic properties of bictegravir, but no opinions whatsoever regarding formulation and co-formulation effects. ViiV waited to provide these new opinions until its reply reports, depriving Gilead of a response. If ViiV wanted the last word on these matters, it should have

17

included them in its opening reports.[3] Although it may be entitled to the last word on matters where it bears the burden, ViiV is not entitled to the *only* word.

## IV. Gilead Should Be Permitted To Serve A Sur-Reply From Its Damages Expert To Address The Flawed Analyses Introduced By ViiV's New Damages Expert In Reply

Finally, Gilead asks the Court for leave to serve a sur-reply from its economist, Dr. Vellturo, to respond to the reply report from ViiV's newly-disclosed expert Dr. Timothy Simcoe. Gilead attaches the proposed sur-reply report from Dr. Vellturo to the motion as Exhibit F.

### A. Dr. Vellturo's Sur-Reply Explains The Flaws In Dr. Simcoe's New Instrumental Variables And New Simulation

ViiV disclosed Dr. Simcoe for the first time in reply in support of its other damages expert, Mr. Sims. Mr. Sims's opening report quantifies ViiV's alleged lost profits. In his rebuttal report, Dr. Vellturo describes the errors in Mr. Sims's model and offers an alternative estimate using a "nested logit model." Ex. Q, Vellturo Rpt. ¶¶ 216-215. At a high level, nested logit models describe how different factors influence consumers' product choices to predict what consumers would have done if one of the product choices had been unavailable. *Id.* Here, Dr. Vellturo's model projects what products consumers would have chosen in the

---

[3] Moreover, to the extent ViiV suffers any prejudice from no longer having the last word on issues on which it bears the burden of proof, Gilead would consent to a response by ViiV, so long as Gilead has the same opportunity to respond to any sur-replies served by ViiV.

"but for" world without Gilead's bictegravir product on the market. Dr. Simcoe's report responds to Dr. Vellturo's analysis. Ex. R, Simcoe Reply Rpt. ¶ 6.

Two of Dr. Simcoe's criticisms are relevant here. First, Dr. Simcoe identifies a coding error in Dr. Vellturo's model. This error created the false impression that the instruments used in the model were performing well, when in fact they needed revision. *Id.* ¶¶ 40-47. Dr. Vellturo corrected the coding error in his model and the instruments in an errata under Rule 26(e). *See* Fed. R. Civ. P. 26(e) (describing duty to supplement where "the disclosure or response is incomplete or incorrect"); Ex. S, Vellturo Errata to Rpt. ¶ 3.

But beyond identifying the coding error, Dr. Simcoe considers alternative model specifications. Dr. Vellturo could not address the flaws in Dr. Simcoe's additional specifications because the scope of a response under Rule 26(e) is limited. Dr. Simcoe introduces several new sets of instruments into Dr. Vellturo's model and re-runs it—causing results that Dr. Simcoe claims show the entire model is unreliable. *See id.* ¶¶ 63-67. But the wide variability in results is caused by Dr. Simcoe's use of poor sets of instruments, not any inherent unreliability of Dr. Vellturo's nested logit model.

Dr. Simcoe's attack on Dr. Vellturo's model involves the "nesting parameters," which estimate the degree of substitution between certain ViiV and Gilead products. In his reply report, Dr. Simcoe builds a simplified nested-logit-

based simulation. He claims that his simulation shows that Dr. Vellturo's conclusions about the closeness of substitution between ViiV's products and Gilead's products are incorrect, rendering Dr. Vellturo's model unreliable. *See id.* ¶¶ 38-42. However, Dr. Simcoe's simulation is based on an oversimplification of the model and a number of flawed assumptions that render it unhelpful and misleading. For example, Dr. Simcoe's simulation is based on the unfounded assumption that the value of certain antiviral product characteristics do not change over time, which is directly contradicted by the data. Ex. F, Vellturo Suppl. Rpt. ¶¶ 5-11. Dr. Vellturo shows that, without this flawed assumption, Dr. Simcoe cannot run his simulations or derive any meaningful results. *Id.*

Gilead requests that the Court permit Dr. Vellturo to respond to these flaws in Dr. Simcoe's attack on the underlying nested logit model.

### B.   Dr. Vellturo's Sur-Reply Explains The Reliability Of His Model

ViiV seeks ▮▮▮▮▮▮▮▮▮ in damages. The purpose of Dr. Simcoe's report appears to be to tee-up a *Daubert* motion regarding Dr. Vellturo's lost-profits analysis and limit Gilead's defenses before the jury. *See* Ex. R, Simcoe Reply Rpt. ¶ 10(d)("[I]t is my opinion that Dr. Vellturo's nested logit model and estimates of ViiV's lost profits are not reliable."). In addition to responding to the flaws in Dr. Simcoe's report, Dr. Vellturo should be able to explain why Dr. Simcoe's criticisms on the reliability of his model are unfounded.

20

The predicate for Dr. Simcoe's conclusions of "unreliability" are his own errors in choosing the instruments he ran in the model and his oversimplified simulation. As Dr. Vellturo shows by comparing his corrected model and Dr. Simcoe's version of the model against actual prescription shares, Dr. Simcoe chose instruments that fail, rather than fix the model. Ex. F, Vellturo Suppl. Rpt. ¶¶ 2-7. Once corrected, Dr. Vellturo's model has robust predictive power, meaning that the model itself squares with how consumers actually behaved across a wide set of data. *Id.* In contrast, Dr. Simcoe's alternative model specifications are less predictive because of his use of poor instruments. *Id.* ¶¶ 4-5. Dr. Vellturo also shows that Dr. Simcoe's goodness-of-fit analysis using his oversimplified simulation is misleading and unreliable and has no bearing on the reliability of Dr. Vellturo's underlying model. *Id.* ¶ 11.

Dr. Vellturo's analysis is important to the question of ViiV's claimed damages and to defending against an anticipated ViiV motion claiming that Dr. Vellturo's model is unreliable. The sur-reply presents the Court (and the jury) with a more accurate picture of the merits of ViiV's damages claims.

## C.    ViiV Is Not Prejudiced By Dr. Vellturo's Sur-Reply

Dr. Vellturo's sur-reply will not prejudice ViiV. ViiV has adequate time to evaluate Dr. Vellturo's sur-reply in advance of his deposition, which is currently

unscheduled. And Gilead would consent to a request by ViiV to file a response to Dr. Vellturo's sur-reply.

On the other hand, denial of a sur-reply will severely prejudice Gilead and undermine a full resolution of this litigation on the merits. Dr. Vellturo resolved the error that ViiV's expert identified through an errata served on February 21st. But as discussed above, Gilead expects that ViiV will still move to exclude Dr. Vellturo's report based on the results from the alternative instrument sets and the simulation that Dr. Simcoe provided in his reply report. Dr. Vellturo should have the opportunity to respond so that the Court and jury will have all appropriate information before them when ViiV asks for billions of dollars in damages. Full consideration of the merits supports granting Gilead's request to file this report.

## CONCLUSION

For the foregoing reasons, the Court should grant Gilead leave to file the supplemental and sur-reply reports identified above and attached to Gilead's motion as Exhibits A-F.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

OF COUNSEL:

*Attorneys for Defendant*
*Gilead Sciences, Inc.*

Adam K. Mortara
J. Scott McBride
Mark S. Ouweleen
Matthew R. Ford
Nevin M. Gewertz
Tulsi E. Gaonkar
Rebecca T. Horwitz
Madeline W. Lansky
Bartlit Beck LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400

Meg E. Fasulo
Bartlit Beck LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
(303) 592-3100

Nao Takada
Takada Legal, P.C.
112-01 Queens Blvd.
Forest Hills, NY 11375
(212) 380-7804

March 26, 2020

## <u>WORD COUNT CERTIFICATION</u>

The undersigned counsel hereby certifies that the foregoing document contains 4,970 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count includes only the body of the letter.  The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)