IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VIIV HEALTHCARE COMPANY, SHIONOGI & CO., LTD. and VIIV HEALTHCARE UK (NO. 3) LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 18-224 (CFC) (CJB) |
| v. | ) ) | REDACTED - PUBLIC VERSION |
| GILEAD SCIENCES, INC., | ) ) | |
| Defendant. | ) | |

## DEFENDANT GILEAD SCIENCES, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTIONS FOR SUMMARY JUDGMENT

OF COUNSEL:
Adam K. Mortara
J. Scott McBride
Mark S. Ouweleen
Matthew R. Ford
Nevin M. Gewertz
Tulsi E. Gaonkar
Rebecca T. Horwitz
Madeline W. Lansky
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400

John M. Hughes
Meg E. Fasulo
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
(303) 592-3100

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Defendant*
*Gilead Sciences, Inc.*

Nao Takada
TAKADA LEGAL, P.C.
112-01 Queens Blvd.
Forest Hills, NY 11375
(212) 380-7804

Originally Filed:  May 22, 2020
Redacted Version Filed:  May 29, 2020

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

NATURE AND STAGE OF THE PROCEEDING ....................................................1

SUMMARY OF ARGUMENT ...............................................................................1

STATEMENT OF FACTS ......................................................................................4

LEGAL STANDARD .............................................................................................4

ARGUMENT ...........................................................................................................6

I.    Claim 6 Specifically Excludes Compounds With Bicyclic A-rings ..............7

    A.    Claim 6 recites compounds with monocyclic A-rings .........................8

    B.    Claim 6 uses closed language to cover four specific compounds.......10

    C.    Compounds with more than one ring are the opposite of and inconsistent with single ring compounds ............................................11

    D.    The written description distinguishes between compounds with monocyclic A-rings and compounds with bicyclic A-rings ...............17

    E.    ViiV chose to prosecute claims for monocyclic A-ring compounds and cancelled all pending claims to bicyclic A-ring compounds..........................................................................................19

II.    Claim 6 Specifically Excludes Compounds With Three Fluorines..............29

CONCLUSION ......................................................................................................33

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
566 F.3d 1282 (Fed. Cir. 2009) ............................................................ 19, 27, 30

*Athletic Alts., Inc. v. Prince Mfg., Inc.*,
73 F.3d 1573 (Fed. Cir. 1996) ...................................................................... 5, 29

*Augme Techs., Inc. v. Yahoo! Inc.*,
755 F.3d 1326 (Fed. Cir. 2014) .................................................................... 4, 11

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) .................................................................... *passim*

*Cook Biotech Inc. v. Acell, Inc.*,
460 F.3d 1365 (Fed. Cir. 2006) .......................................................................26

*Eli Lilly & Co. v. Barr Labs., Inc.*,
222 F.3d 973 (Fed. Cir. 2000) .........................................................................16

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
336 U.S. 271 (1949) .........................................................................................30

*In re Kaplan*,
789 F.2d 1574 (Fed. Cir. 1986) .......................................................................16

*Malta v. Schulmerich Carillons, Inc.*,
952 F.2d 1320 (Fed. Cir. 1991) .............................................................. 3, 31, 32

*Moore U.S.A., Inc. v. Standard Register Co.*,
229 F.3d 1091 (Fed. Cir. 2000) ................................................................. 1, 5, 6

*MorphoSys AG v. Janssen Biotech, Inc.*,
358 F. Supp. 3d 354 (D. Del. 2019) ............................................................ *passim*

*Pennbarr Corp. v. Ins. Co. of N. Am.*,
976 F.2d 145 (3d Cir. 1992) ...............................................................................4

*Sage Prods., Inc. v. Devon Indus., Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) ................................................................. *passim*

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
   242 F.3d 1337 (Fed. Cir. 2001) .................................................................... *passim*

*SmithKline Beecham Corp. v. Apotex Corp.*,
   No. 99-cv-4304, 2005 WL 941671 (E.D. Pa. Mar. 31, 2005)..............................12

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
   574 U.S. 318 (2015) ........................................................................... 5, 28

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*,
   141 F.3d 1084 (Fed. Cir. 1998) ......................................................................26

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*,
   212 F.3d 1377 (Fed. Cir. 2000) ........................................................ 1, 10, 11, 13

*ViiV Healthcare Co. v. Gilead Scis., Inc.*,
   No. 18-cv-224-CFC, 2020 WL 567398 (D. Del. Feb. 5, 2020) ...........................5

*ViiV Healthcare UK Ltd. v. Lupin Ltd.*,
   6 F. Supp. 3d 461 (D. Del. 2013) ................................................................ 31, 32

*Wahpeton Canvas Co. v. Frontier, Inc.*,
   870 F.2d 1546 (Fed. Cir. 1989) ......................................................................16

*Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*,
   904 F.2d 677 (Fed. Cir. 1990) ......................................................................16

**Statutes**

35 U.S.C. § 112 ..............................................................................................30

**Rules**

Fed. R. Civ. P. 56 ...........................................................................................1, 4

**Regulations**

37 C.F.R. § 1.142 ............................................................................................21

37 C.F.R. § 1.143 ............................................................................................21

37 C.F.R. § 1.146 ............................................................................................21

## NATURE AND STAGE OF THE PROCEEDING

ViiV asserts infringement of a single claim of the '385 patent under the doctrine of equivalents. Because application of the doctrine of specific exclusion is a question of law and there are no genuinely disputed facts for a jury to resolve, Gilead seeks summary judgment of non-infringement under Federal Rule of Civil Procedure 56.

## SUMMARY OF ARGUMENT

ViiV opted to exclusively pursue a claim that dictates every atom, every bond, every three-dimensional orientation, every ring, and every structure of the four compounds of claim 6. Due to "the inherent narrowness of the claim language," claim 6 "warrant[s] little, if any, range of equivalents." *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (citing *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997)). As in *Sage*, ViiV "claims a precise arrangement of structural elements" that specifically exclude the accused product. 126 F.3d at 1425. Moreover, claim 6 deploys closed "consisting of" transition language with special meaning in patent law—a meaning that dictates a narrow range of equivalents. *See Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1383 (Fed. Cir. 2000).

ViiV's theory of infringement under the doctrine of equivalents runs afoul of specific exclusion in two independent ways—both familiar to the Court. Claim 6

1

covers four specific compounds having a monocyclic A-ring. Limiting the A-ring in this way is inconsistent with and indeed the opposite of claiming structures with bicyclic A-rings. This exclusion is evident in the way the '385 patent distinguishes monocyclic A-ring structures from various bicyclic A-ring structures.

Further, the prosecution of the patent application confirms that ViiV's claims to compounds with monocyclic A-rings are mutually exclusive with compounds having bicyclic A-rings. When the Patent Office said so, ViiV agreed—removing all bicyclic structures from its claims, adding what became asserted claim 6, and only moving forward with claims to monocyclic A-ring structures. It is undisputed that Gilead's bictegravir has a bicyclic A-ring. ViiV cannot now use the doctrine of equivalents to capture what it told the world it was not attempting to patent.

Claim 6 also allows two—and only two—fluorines on the claimed compounds. When ViiV wanted to claim compounds with three fluorines, it did so explicitly with other claims. But ViiV chose to limit its coverage to the two-fluorines embodiment in claim 6—a narrower claim that scuttled the option of a greater or lesser number of fluorines. In so doing, ViiV made a deliberate drafting decision to limit the claim, which excluded compounds with three fluorines like bictegravir. "[W]here [a patentee] employs a broad term in one claim, but a narrower term, used with respect to only one embodiment in the specification, in

2

another claim, the implication is that infringement of the second claim can be avoided by not meeting the narrower term." *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1327 (Fed. Cir. 1991). Specific exclusion precludes ViiV from using the doctrine of equivalents to inflate its claim and cover a group of compounds that it decided not to cover.

This Court previously confronted (but did not resolve) the question of whether the doctrine of specific exclusion bars ViiV's former infringement allegation regarding the dramatically broader claim 2. Claim 2 covers billions of compounds, while claim 6 represents just four—all embodiments of claim 2 and thus implicitly subject to even more restrictions and exclusions. This is because it is axiomatic that one cannot infringe a narrower claim (6) without also infringing a broader one (2) that fully encompasses it. For all the reasons that specific exclusion applied to claim 2, it must apply here—now reinforced by claim 6's use of closed transition language and recitation of structure that is orders of magnitude more specific than claim 2. The Federal Circuit's repeated and consistent instructions that narrower claims deserve narrower ranges of equivalents cannot be respected if this case is allowed to proceed.

There are no genuinely disputed facts for the jury to resolve. Indeed, the relevant facts all concern the construction of claim 6, which is a question exclusively for the Court. And if a claim specifically excludes the accused

equivalent, then that structure cannot be insubstantially different as a matter of law—whether or not the accused product and the claim are similar, or how similar they are, becomes irrelevant. The Court should therefore grant summary judgment of non-infringement in favor of Gilead.

## STATEMENT OF FACTS

The relevant facts are set forth in the Concise Statements of Facts.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pennbarr Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 149 (3d Cir. 1992).

Specific exclusion bars a patentee from asserting infringement under the doctrine of equivalents "where the patentee seeks to encompass a structural feature that is the opposite of, or inconsistent with, the recited limitation." *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1335 (Fed. Cir. 2014). "A particular structure can be deemed outside the reach of the doctrine of equivalents because that structure is clearly excluded from the claims whether the exclusion is express or implied." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1345 (Fed. Cir. 2001). Simply put, a claim cannot encompass an equivalent

that is a "mutually exclusive" structure. *MorphoSys AG v. Janssen Biotech, Inc.*, 358 F. Supp. 3d 354, 362–63 (D. Del. 2019).

"Whether the specific exclusion principle bars an infringement claim is [] a question of law," not a factual inquiry. *ViiV Healthcare Co. v. Gilead Scis., Inc.*, No. 18-cv-224-CFC, 2020 WL 567398, at *1 (D. Del. Feb. 5, 2020); *see also Athletic Alts., Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582–83 (Fed. Cir. 1996). In turn, the Court's review of "evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history) … amount[s] solely to a determination of law." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015).

The Federal Circuit's analysis in *Moore* illustrates the Court's exclusive role with respect to specific exclusion. There, the patentee alleged that claim language requiring adhesive over the "majority" of a strip of the claimed mailer business form was "insubstantially different" from the accused mailer, where the adhesive only covered 47.8% of the mailer's strip. *Moore*, 229 F.3d at 1106. (Common sense tells us that it is likely that 48% adhesive was insubstantially different from 51%). The patentee claimed at summary judgment that the "critical issue" was only whether "'about 48%' is equivalent to '50.001%'" as a factual matter. *Id.* The Federal Circuit disagreed that this claim of factual equivalence had any bearing on the question because the claim language itself foreclosed equivalence as a matter

of law. *Id.* In short, "[i]f a minority could be equivalent to a majority, this limitation would hardly be necessary." *Id.*; *see Sage*, 126 F.3d at 1425 (explaining why "the law restricts application of the doctrine of equivalents without further fact finding in some cases"); *SciMed*, 242 F.3d at 1345–47 (affirming summary judgment of non-infringement and rejecting patentee's argument that equivalence analysis was first necessary); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955–56 (Fed. Cir. 2006) (same); *MorphoSys*, 358 F. Supp. 3d at 363.[1]

## ARGUMENT

"If [the Federal Circuit's] case law on the doctrine of equivalents makes anything clear, it is that all claim limitations are not entitled to an equal scope of equivalents." *Moore*, 229 F.3d at 1106. A patentee with "manifestly limited claims" cannot reclaim broader claims through the doctrine of equivalents, as the patentee is the party who "could have sought claims with fewer structural encumbrances." *Sage*, 126 F.3d at 1425. Where the "issued patent contains clear structural limitations, the public has a right to rely on those limits in conducting its business activities." *Id.* To hold otherwise would upend the public's ability to rely on that narrow structure to understand where it can innovate. *Id.* ("Society at large

---

[1] Thus, ViiV erred when it told the Court that specific exclusion requires the Court to first evaluate evidence of factual equivalence before applying the specific-exclusion doctrine. *See* Nov. 14, 2019 Hearing Transcript at 104–5, 112 (describing incorrect standard for finding doctrine of equivalents unavailable as a matter of law at summary judgment).

would bear these [] costs in the form of virtual foreclosure of competitive activity within the penumbra of each issued patent claim."). This consideration is of particular importance in the pharmaceutical sciences, where companies must analyze the structures of claimed compounds to assess potential infringement before spending hundreds of millions of dollars to develop and seek FDA approval of their products.

Claim 6 explicitly and unambiguously provides for every atom and bond of the claimed compounds. That detailed structure specifically excludes compounds with bicyclic A-rings and, independently, excludes three fluorine atoms on the other side of the molecule. It is undisputed that bictegravir contains both a bicyclic A-ring and three fluorine atoms. ViiV cannot now capture the structures excluded from its hyper-narrow claim using the doctrine of equivalents.

## I.    Claim 6 Specifically Excludes Compounds With Bicyclic A-rings

Claim 6, as a matter of law, specifically excludes structures with bicyclic A-rings. The language of the claim makes clear that ViiV covered only monocyclic A-ring compounds. And the written description and prosecution history reinforce the distinction ViiV made between structures with monocyclic A-rings and those with bicyclic A-rings.

## A.    Claim 6 recites compounds with monocyclic A-rings

Claim 6 describes four compounds with monocyclic A-rings using precise language.[2] Ex. D, D.I. 73 at 12–13; Ex. B, Wipf Dep. Tr. 154:17–23. Claim 6 recites:

> **6.** A compound selected from the group consisting of (4R,9aS)-5-Hydroxy-4-methyl-6,10-dioxo-3,4,6,9,9a,10-hexahydro-2H-1-oxa-4a,8a-diaza-anthracene-7-carboxylic acid 2,4-difluoro-benzylamide; an enantiomer thereof; diastereomer thereof; mixtures of enantiomers thereof; mixtures of diastereomers thereof; mixtures of enantiomers and diastereomers thereof; or a pharmaceutically acceptable salt thereof.

Claim 6 is a claim to four compounds "consisting of" "(4R,9aS)-5-Hydroxy-4-methyl-6,10-dioxo-3,4,6,9,9a,10-hexahydro-2H-1-oxa-4a,8a-diaza-anthracene-7-carboxylic acid 2,4-difluoro-benzylamide" and its stereoisomers.[3] That name precisely and fully recites the compound dolutegravir and its structure, according to accepted chemical-naming principles. Ex. B, Wipf Dep. Tr. 152:19–153:15 ("Q. And each of these four compound chemical names [from claim 6] on the left

---

[2] The '385 patent uses the term "A ring" or "ring A" to refer to ring on the far right of these compounds, as shown in Figure I-I-I of the '385 patent. The parties have adopted this naming convention. *See, e.g.*, Ex. I, D.I. 1 at ¶¶ 20, 34, 53; Ex. G, D.I. 123 at ¶¶ 36, 38; Ex. A, D.I. 201 at ¶ 71; Ex. B, Wipf Dep. Tr. 105:1–106:12.

[3] At the motion for judgment on the pleadings stage, ViiV argued that the entire chemical name is the claim limitation, while Gilead asserted that different pieces of the chemical name amount to claim limitations. *See* D.I. 116 at 10; D.I. 128 at 2–3. It is not necessary to resolve that dispute to decide this motion. Whether the entire chemical name or portions of it are considered as the claim limitation, the language specifically excludes compounds that have bicyclic A-rings and compounds with three fluorines.

correspond to a single chemical compound structure that you've shown on the right? A. That is correct."). In fact, changing or misinterpreting any aspect of the "precise" nomenclature will result in different structures. *Id.* at 177:7–178:2 (discussing claim withdrawn from prosecution written: "A. … But for the first one you have to be very careful because if you misinterpret, let's say the 1,2-B and you put it on the wrong side of the pyrazine, you generate a different tail of a structure. Q. So when you -- you mean be careful, you just have to be precise that you get the numbering correct? A. That is correct….").



(A-ring in blue above). ViiV agrees that the IUPAC language in claim 6 specifically describes four compounds with monocyclic A-rings, as set forth in its claim-construction briefs and confirmed by its chemistry expert, Dr. Wipf.[4] Ex. D, D.I. 73 at 12–13; Ex. B, Wipf Dep. Tr. 152:19–153:15.

---

[4] The claim refers to the other three compounds in relation to dolutegravir—*i.e.*, the enantiomer and diastereomers of dolutegravir. *See* Ex. D, D.I. 73 at 12.

## B.    Claim 6 uses closed language to cover four specific compounds

ViiV's use of the language "consisting of" in claim 6 "emphasizes the claim's specific limitation[s]" and affects the permissible range of equivalents. *See Vehicular Techs.*, 212 F.3d at 1383. "[T]he range of equivalents cannot be divorced from the scope of the claims," and "a drafter uses the phrase 'consisting of' to mean 'I claim what follows and nothing else.'" *Id.* at 1382– 83 (holding that although doctrine of equivalents is not foreclosed as a matter of law, no infringement under doctrine of equivalents because, in part, "the term 'consisting of' emphasizes the claim's specific limitation to a concentric spring structure"). As such, "[t]he phrase 'consisting of' is a term of art in patent law signifying restriction and exclusion." *Id.* at 1382.

In *Vehicular Technologies*, this language of exclusion meant that the accused product with one spring could not infringe a claim requiring a "spring assembly consisting of" two springs. *Id.* at 1379, 1383. Here, ViiV specifically claimed a compound "consisting of" four specific structures, each with a singular A-ring, emphasizing the importance of those specifically recited structures to the claim. ViiV's amorphous allegations of the range of equivalents for claim 6 in no way accounts for the closed "consisting of" language it chose. The way to account for that language is to respect what ViiV said and did in its patent—respect the difference between compounds with single A-rings and bicyclic A-rings.

### C.    Compounds with more than one ring are the opposite of and inconsistent with single ring compounds

By specifically claiming compounds with only monocyclic A-rings, and doing so in a closed claim format, claim 6 excludes compounds with bicyclic A-rings. The Federal Circuit has repeatedly held that a patentee's selection of a particular structural limitation excludes "opposite" structures. *Augme*, 755 F.3d at 1335; *see SciMed*, 242 F.3d at 1346 ("by defining the claim in a way that clearly excluded certain subject matter, the patent implicitly disclaimed the subject matter that was excluded"); *Bicon*, 441 F.3d at 955 ("the claim recites a particular shape for the basal portion of the abutment that clearly excludes distinctly different and even opposite shapes"); *Vehicular Techs*., 212 F.3d at 1383.

Claim 6, in language selected by ViiV, "recites a particular shape" for the A-ring—a single ring—which thereby "clearly excludes distinctly different and even opposite shapes," such as a bicyclic ring. *Bicon*, 441 F.3d at 955 (claimed "frusto-spherical" shaped abutment specifically excluded "frusto-conical" shaped abutment). It is undisputed that the IUPAC nomenclature in claim 6 details the specific structure of four compounds with A-rings with only a single ring. Ex. B, Wipf Dep. Tr. 152:19–153:15; Ex. I, D.I. 1 at ¶ 29 (describing "general compound" in claim 6 and depicting A-ring as a single ring). Indeed, ViiV has described the "purpose" of IUPAC nomenclature as "generat[ing] unambiguous names of compounds," a purpose that inherently requires a precise structure to

distinguish among compounds. Ex. D, D.I. 73 at 13 & n.9 (describing IUPAC's "systematic nomenclature for naming organic molecules"); Ex. B, Wipf Dep. Tr. 177:7–178:2; *see also SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-cv-4304, 2005 WL 941671, at *26 (E.D. Pa. Mar. 31, 2005).

By definition, a monocyclic A-ring is mutually exclusive with a bicyclic A-ring. Ex. B, Wipf Dep. Tr. 64:20–65:25 ("Q. [A monocyclic A-ring] cannot be called a bicyclic A ring, that would be wrong? A. That is -- yes. Correct. Under the understanding about the A ring definition, that would be wrong."), 70:7–23; Ex. G, D.I. 123 at ¶ 51 ("a bridged ring structure minimally consists of a system of two rings that contain at least one atom that is connected to two bridgehead atoms"); Ex. C, Engelman Dep. Tr. 159:24–160:8, 161:10–17. And a claim "consisting of" monocyclic A-rings structures is inconsistent with and distinctly different from an A-ring with a second (or third or fourth) ring. As ViiV's expert Dr. Wipf has explained, "There are different types of ring structures that can be formed between two rings, including fused rings, spiro rings, and bridged rings." Ex. A, D.I. 201 at ¶ 74; Ex. B, Wipf Dep. Tr. 76:13–18. Each of these *bicyclic* systems "consists of *two* rings." Ex. A, D.I. 201 at ¶ 74 (emphasis added).

All three of these bicyclic structures stand in stark contrast to a single ring. Ex. F, D.I. 206 at ¶¶ 53–56; Ex. B, Wipf Dep. Tr. 57:2–57:11 ("Q. What does it mean to have a monocyclic ring structure? A. Well, it's a ring structure that's

12

composed of a single ring. Q. And so to be monocyclic means to be limited to a single ring? A. That would be a characterization of, you know, a structure. If it's monocyclic, it has a single ring. Q. And in comparison, a bicyclic ring structure is limited to two rings? A. And there are different types of bicyclic ring structures, but bicyclic essentially means two rings."). Because a skilled artisan understands A-rings "consisting of" one ring and those consisting of two rings to be mutually exclusive, the person of skill would likewise understand that claim 6 does not and cannot include compounds with A-rings consisting of more than one ring. *See Vehicular Techs.*, 212 F.3d at 1383 (claim "consisting of" two springs not infringed by accused product with a single spring).



D.I. 201 ¶¶ 70, 74, Declaration of Peter Wipf

It is not necessary for claim 6 to expressly exclude compounds with bicyclic A-rings for the doctrine of specific exclusion to apply. "A particular structure can be deemed outside the reach of the doctrine of equivalents because that structure is clearly excluded from the claims whether the exclusion is express or *implied*."

*SciMed*, 242 F.3d at 1345–46 (emphasis added) (discussing cases of implicit specific exclusion). The Court in *SciMed* relied on the patent's written description to find that claims to coaxial lumens (*i.e.*, two tubes situated one within the other) specifically excluded dual-lumen (*i.e.*, two tubes lying next to one another) configurations. *Id.* The Court in *Bicon* likewise found that claims to frusto-spherical abutments specifically excluded frusto-conical abutments, a shape that is "clearly contrary to" the claimed shape in light of the written description's "characterization of its abutment as having a convex, frusto-spherical shape." *Bicon*, 441 F.3d at 955–56. And in relying on the patentee's actions during prosecution, the Federal Circuit in *Sage* held that claims requiring "an elongated slot at the top of the container body" with a "constriction extending over said slot" specifically excluded slots within the container and constriction elements that "d[id] not substantially 'constrict access' to the slot." *Sage*, 126 F.3d at 1422, 1424–25.

The exclusion of bicyclic A-rings from claim 6 is even more straightforward than their exclusion from claim 2. Claim 2 allowed for extensive variations of what could be attached to the A-ring, including the structure ViiV has shown the Court many times (below). *See also* Ex. I, D.I. 1 at ¶ 63.

14



A Compound From Claim 2

Not within the scope of asserted Claim 6

ViiV Slide 8 from Nov. 11, 2019 Hearing (annotated by Gilead)

ViiV relied on these variations to argue that the "independently" language in claim 2 did not preclude A-ring substitutions from being connected to form a bicyclic ring. Ex. A, D.I. 201 at ¶ 118.

But ViiV cannot make these arguments with claim 6, which sets forth much narrower scope and just a few of the billions of embodiments of claim 2. Ex. B, Wipf Dep. Tr. 159:22–160:1, 162:4–10. The hyper-specific and "consisting of" language in claim 6 allows for exactly zero of claim 2's permitted variations on the A-ring. A claim "consisting of" four compounds identified by "unambiguous" IUPAC language (a "systematic nomenclature for naming organic molecules") cannot have the same range of equivalents as a genus claim encompassing those four compounds plus billions of others, including the compound ViiV has repeatedly used to justify this lawsuit. *See also* Ex. I, D.I. 1 at ¶ 63; *see also* Appendix A. If it were a close call on whether claim 2 specifically excluded bicyclic A-rings, then claim 6 *even more* specifically excludes them. What the

15

Court may have regarded as a difficult case on claim 2 is no longer difficult with respect to a much more specific structure for claim 6.

Put another way, it is axiomatic that an accused product cannot infringe a narrower claim without also infringing a broader claim fully encompassing it. *In re Kaplan*, 789 F.2d 1574, 1577 (Fed. Cir. 1986) ("the more narrowly claimed invention cannot be practiced without infringing the broader claim"); *see also Eli Lilly & Co. v. Barr Labs., Inc.*, 222 F.3d 973, 986–87 (Fed. Cir. 2000).[5] Thus, if bicyclic A-rings are within the range of equivalents for claim 6, they must also be within the range of equivalents for claim 2. To hold otherwise would lead to the absurd (and legally incorrect) conclusion that a product infringes a narrow claim to certain molecules but does not infringe a genus claim that covers those same molecules. *See* Appendix A.

---

[5] This truism applies to the doctrine of equivalents, *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989) (noting in doctrine of equivalents case that a narrower claim cannot be infringed if a broader claim is not), subject to one exception not applicable here—where the broader claim's alleged range of equivalents ensnares the prior art and the narrower claim's alleged range of equivalents does not, an accused product may infringe the narrower claim without infringing the broader claim, *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 686 (Fed. Cir. 1990). As to the ensnarement exception not in play here, as of 2010, the Director of the USPTO, acting through then-Solicitor Raymond T. Chen, now Judge Chen of the Federal Circuit, was "not aware of any actual examples of this phenomenon," including in *Wilson Sporting Goods* itself. Brief for Appellee Director of the United States Patent and Trademark Office at 25–26, *In re Tanaka*, 640 F.3d 1246 (Fed. Cir. 2011) (No. 2010-1262), 2010 WL 3950018.

It is unnecessary to decide whether claim 2 specifically excludes bicyclic A-rings to grant this motion (because claim 6 is much narrower). But the contrary holding—that claim 6 does not specifically exclude bicyclic A-rings—necessarily implies that claim 2 also does not. Therefore, all the reasons Gilead gave for the specific exclusion of those structures from claim 2 apply here as well. *See* D.I. 104 at 10–17; D.I. 128 at 14–22. Those arguments are now reinforced by the extreme specificity and transition language of claim 6—neither of which ViiV has acknowledged to date. For completeness, despite the Court's familiarity, Gilead provides a review of those arguments.

### D.    The written description distinguishes between compounds with monocyclic A-rings and compounds with bicyclic A-rings

The written description of the '385 patent confirms what claim 6 makes plain: compounds with monocyclic A-rings are inconsistent with, and distinctly different from, those with bicyclic A-rings. *See SciMed*, 242 F.3d at 1345–46 (written description supported finding that claims to coaxial lumens specifically excluded dual lumen); *Bicon*, 441 F.3d at 955–96 (written description's "characterization of its abutment as having a convex, frusto-spherical shape" supported specific exclusion of frusto-conical shape).

The written description describes several compounds with either fused (red below) or spiro (green below) bicyclic A-rings. *See, e.g.*, Ex. E, '385 patent at 64:35–43, 132:56–65.

17

The written description teaches that bicyclic A-ring compounds are mutually exclusive from compounds with monocyclic A-rings. *Id.* at 31:33–37. As the patent puts it, "[s]ubstituents on A ring may form a condensed [fused] ring or a spiro ring" to make "a tetracyclic compound,"[6] *i.e.*, a compound with a bicyclic A-ring. *Id.* at 33:31–34. The patent distinguishes the monocyclic A-ring compounds with independently selected substitutions from other arrangements that allow substitutions to be "taken together" to form bicyclic A-rings, making clear that these are mutually exclusive choices. *Id.* at 33:35–34:8.

---

[6] In the context of the '385 patent, an equivalent way of saying that a compound has a monocyclic A-ring is to describe the compound as "tricyclic"—meaning that there two other rings in addition to the A-ring resulting in three ("tri-") total rings ("-cyclic"). A compound with a bicyclic A-ring can also be described as "tetracyclic"—a bicyclic A-ring (two) plus two other rings results in four ("tetra-") total rings ("-cyclic"). *See* Ex. F, D.I. 206 at ¶¶ 28, 30; Ex. B, Wipf Dep. Tr. 74:22–75:2 (describing bictegravir as a "tetracyclic" compound under IUPAC); Ex. I, D.I. 1 at ¶¶ 20 (describing "third-ring" in dolutegravir as the "ring A"), 34, 53, 56, 63 (describing bictegravir's bridged "ring A").

The '385 patent describes these options disjunctively: substitutions on the A-ring may be (1) independent, or (2) substitutions at any two R positions that are on the same carbon may be connected to form a spiro two-ring A-ring; or (3) substitutions at any two neighboring positions may be taken together to form a fused two-ring A-ring. *See* Ex. E, '385 patent at 33:30–34:8; *see also* Ex. D, D.I. 73 at 37–41. The public could not possibly predict that ViiV's hyper-narrow and closed format claim to monocyclic A-ring compounds would, years after patent issuance, be inflated to reach bicyclic A-ring structures that the much broader claim 2 does not even encompass. The claims and written description are more than enough. But then there is the prosecution history, which tells the same story yet again.

### E.    ViiV chose to prosecute claims for monocyclic A-ring compounds and cancelled all pending claims to bicyclic A-ring compounds

The patent's prosecution history drives the point home further. The public is entitled to rely on the conscious decisions that ViiV made during prosecution, and those decisions uniformly communicate that claim 6 excludes bicyclic A-ring structures. *See Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1297 (Fed. Cir. 2009) ("conscious decision to distinguish Crystal B from the claimed invention" during prosecution specifically excluded Crystal B from range of equivalents); *Sage*, 126 F.3d at 1424–25.

During prosecution, ViiV once sought claims that covered both compounds with monocyclic A-rings and compounds with bicyclic A-rings. For example, originally filed claim 17 explicitly included bicyclic A-ring structures. Ex. H, at VIIVUS00000461–62. Claim 17 mirrored the disclosure in the written description allowing for mono- and bicyclic A-rings. *See* Ex. E, '385 patent at 33:35–34:8; Ex. B, Wipf Dep. Tr. 171:19–25 ("Q. … It specifically covers spiro bicyclics and fused bicyclics, this Claim 17. That we agree on? A. That is correct, I believe, yep.").



But ViiV ran into a problem: The Patent Office issued a restriction requirement, determining that the pending claims covered thirty distinct inventions. Ex. H, VIIVUS00001121–35. In setting out those distinct inventions, the Patent Office divided compounds based on their A-ring structures, explicitly listing

compounds with bicyclic A-ring structures as separate inventions from compounds with monocyclic A-rings. The Patent Office explained that the identified inventions had "*mutually exclusive* characteristics." Ex. H, VIIVUS00001134 (emphasis added); *cf. MorphoSys*, 358 F. Supp. 3d at 363 (finding specific exclusion because terms were mutually exclusive). And it required ViiV to select just one invention for prosecution. *See* 37 C.F.R. §§ 1.142 ("If two or more independent and distinct inventions are claimed in a single application, the examiner in an Office action will require the applicant … to elect an invention to which the claims will be restricted ….."); 1.146.

ViiV chose monocyclic A-ring compounds. ViiV did not oppose the Patent Office's determination that compounds with monocyclic A-rings were distinct from compounds with bicyclic A-rings, and ViiV did not elect to proceed with any of the inventions that included bicyclic A-rings. Ex. H, VIIVUS00001172; *see also* 37 C.F.R. § 1.143 (allowing an applicant who disagrees with a restriction requirement to request withdrawal or modification). Instead, ViiV cancelled or narrowed all pending claims that covered A-rings with more than a single ring. Ex. H, VIIVUS00001165–67. ViiV also added six new and much narrower claims, each of which explicitly are monocyclic A-ring compounds, as indicated through chemical-naming language or a drawn structure. *Id.* at -1168–71. It was at this point—after removing all claims describing compounds with bicyclic A-rings—

that ViiV introduced claim 6, covering a meager four compounds all with monocyclic A-rings. *Id.* at -1170.

ViiV elected to pursue an invention that includes only compounds containing monocyclic A-rings and excludes those with bicyclic A-rings. Claims 2 and 6 were emblematic of that choice. Indeed, ViiV told the Patent Office, and the public, that a compound of claim 6 (dolutegravir) is the representative species of the invention ViiV selected. *Id.* at -1172.



ViiV made these choices without objecting to the Patent Office's restriction requirement, conceding that compounds with bicyclic A-rings have "mutually exclusive characteristics" from the ones ViiV elected to pursue.[7] Ex. H, VIIVUS00001172, -1179; -1134. This prosecution history leaves no doubt that claim 6 focuses specifically on monocyclic A-ring compounds to the exclusion of

---

[7] Following ViiV's election, the Patent Office clarified that the A-ring of ViiV's elected group was "1,3-oxazinane-2,3-diyl," *i.e.*, the monocyclic A-ring of dolutegravir. Ex. H, VIIVUS00001178; Ex. B, Wipf Dep. Tr. 105:8–17. ViiV did not object to this clarification either. Ex. H, VIIVUS00001204.

22

compounds with bicyclic A-rings. That is what the Patent Office's restriction requirement demanded.

The public is also advised of the exclusion of bicyclic A-rings through the Patent Office's forced amendment of the abstract. Ex. B, Wipf Dep. Tr. 184:3–13, 186:12–187:3. When electing to proceed with the monocyclic A-ring structures exclusively, ViiV *at first* refused to amend its abstract. The original abstract embraced bicyclic A-rings. Ex. H, VIIVUS00000488.



ViiV's expert agreed that the original abstract literally covers compounds with bicyclic A-rings. Ex. B, Wipf Dep. Tr. 184:3–7. ViiV's expert explained in his deposition that his view was that the original abstract indeed literally covered *bridged* bicyclic ring systems, such as the A-ring in bictegravir:

> Q. And would [the original abstract] literally cover a bridged bicyclic A ring as well?
>
> A. It does cover all polycyclic systems, so I believe it literally would also cover a bicyclic ring system, a bicyclic bridged ring system.

*Id.* at 184:8–13, 186:12–187:3 ("Q. [The original abstract] includes fused, spiro, and bridged bicyclic A rings? A. That is correct.").

Following ViiV's election of compounds having monocyclic A-rings, the Patent Office objected to the original abstract, finding that it did not represent "the general nature of the compound[s]" elected and claimed by ViiV. Ex. H, VIIVUS00001181–82.

> ***Specification Objection - Abstract***
>
> Applicant is reminded of the proper content of an abstract of the disclosure.
>
> With regard particularly to chemical patents, for compounds or compositions, the general nature of the compound or composition should be given as well as the use thereof, e.g., *The compounds are of the class of alkyl benzene sulfonyl ureas, useful as oral anti-diabetics.* Exemplification of a species could be illustrative of members of the class. For processes, the reactions, reagents and process conditions should be stated, generally illustrated by a single example, unless variations are necessary. See MPEP § 608.01(b), Section B.
>
> The abstract of the disclosure is objected to because it fails to exemplify any members or formulae illustrative of its class. Correction is required. See MPEP § 608.01(b).
>
> The examiner suggests incorporating the structure of formula (I-1-1) into the abstract, to overcome this objection.

ViiV amended the abstract in a manner consistent with ViiV's exclusion of bicyclic A-ring compounds. *Id.* at -1196–97, -1207. According to ViiV's amended abstract, the present invention of the '385 patent is a class of compounds having

monocyclic A-rings. ViiV selected Formula I-1-1 as representative and defined the A-ring so as to exclude the bicyclic A-ring compounds. That definition omits the language from the written description that allows bicyclic A-rings.



ViiV earlier conceded in this case that "some specific spiro and fused [*i.e.,* bicyclic] ring structures are precluded from the scope of claims 1 and 2 of the '385 patent based on the way the patent examiner divided the disclosures of the '385 patent during prosecution." Ex. A, D.I. 201 at ¶ 120 n.15. ViiV offers no reason based on the case law or facts that this exclusion would not also exclude the bridged bicyclic compounds its own expert says had been literally embraced in a

formula of the original written description. Ex. B, Wipf Dep. Tr. 184:8–13, 186:12–187:3.

It is undisputed and irrelevant that bictegravir or compounds with other bridged bicyclic A-rings are not disclosed in the written description of the *issued* '385 patent.[8] *See* Ex. A, D.I. 201 at ¶ 121; Ex. G, D.I. 123 at ¶ 52. In many specific exclusion cases, the accused equivalent was nowhere disclosed in the written description—it is no requirement of the doctrine that the equivalent be there and no Federal Circuit case says that it is. *See, e.g.*, *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1379 (Fed. Cir. 2006); *Bicon*, 441 F.3d at 955; *Sage*, 126 F.3d at 1425. ViiV cannot escape specific exclusion with assertions, however emphatic, that it cannot have excluded what it did not disclose.

Gilead and "other players in the marketplace are entitled to rely on the record made in the Patent Office in determining the meaning and scope of the patent." *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1091 (Fed. Cir. 1998) (reversing grant of preliminary injunction because plaintiff did not have a reasonable likelihood of success of proving infringement under the doctrine of equivalents based on the intrinsic record of the asserted patent); *cf. Sage*, 126

---

[8] ViiV's expert agrees that, *as issued* (*i.e.*, without the original abstract), the '385 patent does not describe compounds with bridged bicyclic A-rings. Ex. G, D.I. 123 at ¶ 52 ("the '385 Patent does not disclose any bridged ring structures"); Ex. A, D.I. 201 at ¶ 104.

F.3d at 1425 ("Because this issued patent contains clear structural limitations, the public has a right to rely on those limits in conducting its business activities."). Here, there is only one way to understand the '385 patent and its prosecution history: claim 6 excludes bicyclic A-ring compounds because they are mutually exclusive with the claimed monocyclic A-ring compounds. ViiV agreed with the Patent Office, removed those claims from prosecution, and added claim 6 (among others) limited to just four monocyclic A-ring structures.

ViiV's course of conduct during prosecution cannot be set aside. *See Abbott*, 566 F.3d at 1297. As in *Abbott*, ViiV's actions shed light on which structures are inconsistent with claim 6. There, the patent owner filed a Japanese provisional application that described two forms of a compound: Crystal A and Crystal B. *Id.* at 1287. That Japanese application defined the two crystals "very specifically," giving a number of measurements that corresponded to each. *Id.* But when filing the corresponding US application, the patentee "jettisoned the Crystal B disclosure" and claimed only Crystal A. *Id.* At summary judgment, the Court determined that there could be no infringement by defendant's Crystal B product under the doctrine of equivalents: "[T]he bounds of Crystal A equivalents cannot ignore the limits on Crystal A in the '507 patent, which as discussed above, includes a conscious decision to distinguish Crystal B from the claimed invention" during prosecution. *Id.* at 1297. ViiV too made a conscious decision to distinguish

the claimed A-rings limited to one ring from bicyclic A-rings in the written description and during prosecution.

Claim 6's exclusion of bictegravir is consistent with how other courts have addressed the range of the doctrine of equivalents when claims provide detailed statements of structure. *See Sage*, 126 F.3d at 1425. In *Sage*, the Federal Circuit determined that the patent "claim[ed] a precise arrangement of structural elements that cooperate in a particular way to achieve a certain result." *Id.* The patentee was not permitted to resort to the doctrine of equivalents because "it could have sought claims with fewer structural encumbrances" but did not. *Id.* Here, ViiV tried "to negotiate broader claims" but was unsuccessful. *Id.* In "fulfill[ing] its statutory role," the Patent Office required ViiV to select a single invention, and ViiV elected A-rings limited to a single ring without objection. *Id.* ViiV "left the PTO with manifestly limited claims." *Id.*[9]

\* \* \*

The Court should find as a matter of law that claim 6 specifically excludes compounds with bicyclic A-rings and grant summary judgment of non-infringement to Gilead.

_____

[9] To the extent there is any dispute about what happened during prosecution or the effect of the prosecution history, those are questions for the Court, not a jury, to decide. *See Teva Pharm.*, 574 U.S. at 331.

## II.  Claim 6 Specifically Excludes Compounds With Three Fluorines

Claim 6's precise language likewise defines four compounds with exactly

two fluorines on the benzyl tail. Claim 6 recites "(4R,9aS)-5-Hydroxy-4-methyl-

6,10-dioxo-3,4,6,9,9a,10-hexahydro-2H-1-oxa-4a,8a-diaza-anthracene-7-

carboxylic acid *2,4-difluoro-benzyl*amide" and its stereoisomers. ViiV specified

that claim 6 covers only compounds with a di-fluoro benzyl, *i.e.*, a benzyl tail with

two fluorines. ViiV "defin[ed] the claim in a way that clearly excluded certain

subject matter"—namely, compounds with three fluorine atoms. *SciMed*, 242 F.3d

at 1346; *see also Athletic Alts.*, 73 F.3d at 1582 (claim requiring three offset

distances specifically excluded two offset distances).



Claim 6 stands in contrast to claim 2, which expressly allows 1, 2, or 3

halogen atoms (including fluorine). *See* Ex. E, '385 patent at 178:34–36. ViiV

cannot dispute that it could have sought a broader version of claim 6 to allow for

three fluorine atoms. But it did not. ViiV instead decided to prosecute claim 6 as a

narrow claim that precisely defines the compound's structure to include exactly

two fluorine atoms. In doing so, ViiV excluded compounds with one or three fluorines from claim 6.

ViiV should not be permitted recourse to the doctrine of equivalents to recapture what it chose not to cover in the claim it is asserting. *See Abbott*, 566 F.3d at 1297 ("The '507 patent, of course, could have claimed the known Crystal B formulation which was known to the inventors because it appeared in their priority JP '199 application. The applicants chose not to claim Crystal B."); *Sage*, 126 F.3d at 1425. As in *Sage*, ViiV "could have sought claims with fewer structural encumbrances," one that would allow for 1, 2, or 3 fluorine atoms, as it did in claims 1 and 2.[10] *Sage*, 126 F.3d at 1425. ViiV must accept the consequences for failing to do so. The Federal Circuit holds that "as between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure." *Id.*

That ViiV claimed compounds with 1, 2, and 3 fluorines elsewhere in the '385 patent only strengthens the exclusion. The Federal Circuit has confronted

---

[10] In *Graver Tank*, as opposed to this case, the patentee could not have sought broader, valid claims to literally cover the accused flux. The patentee tried to get such claims, but the Court held that they were invalid for failure to comply with the predecessor to 35 U.S.C. § 112. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 336 U.S. 271, 277 (1949). And unlike the claims in *Sage* and here, the claims in *Graver Tank* did not recite precise and exacting structural requirements. *Sage*, 126 F.3d at 1425.

such a scenario, holding that "where [a patentee] employs a broad term in one claim, but a narrower term, used with respect to only one embodiment in the specification, in another claim, the implication is that infringement of the second claim can be avoided by not meeting the narrower term." *Malta*, 952 F.2d at 1327. The patent owner in *Malta* asserted two independent claims to handbells, the broader recited "opposing pairs of 'striking surfaces'" and the narrower recited "opposed pairs of buttons." *Id.* at 1322. The accused handbells included "striking surfaces" like those of the broader claim but not the specific "buttons" named in the narrow claim. *Id.* at 1323. A jury found that the narrower claim was infringed only by equivalents. *Id*. The Federal Circuit reversed, holding that the jury verdict of infringement under the doctrine of equivalents could not stand because, among other reasons, the patent and claims establish a distinction between the broader term and the narrower term on which the public is allowed to rely. *Id.* at 1327. So too here. ViiV's narrow claim 6 to compounds with two fluorines stands in contrast to the much broader claim 2 that allows for variety in number and type of halogens. Infringement of claim 6 can therefore "be avoided by not meeting the narrower term"—by not having a two-fluorine compound. *Id.*[11]

---

[11] The decisions reached in *MorphoSys*, *supra*, and *ViiV Healthcare UK Ltd. v. Lupin Ltd.*, 6 F. Supp. 3d 461 (D. Del. 2013) are consistent with the operation of specific exclusion here. Given the Court's implicit rejection of a foundation in those rulings in the disclosure-dedication doctrines, perhaps those rulings could be

A tri-fluoro version of the compounds covered in claim 6 (*e.g.* "tri-fluoro dolutegravir") would be within the literal scope of claim 2, just like the "striking surfaces" of *Malta* were within the literal scope of another claim. *See* Appendix A. And just like in *Malta*, those compounds could not be within the range of equivalents of claim 6. *Id.* Bictegravir is even more different from the structures of claim 6 than tri-fluoro dolutegravir in that it has the bridged bicyclic A-ring as well. But that additional difference cannot bring it back within the range of equivalents of claim 6 or save ViiV's theories of infringement from *Malta*. Thus bictegravir, like tri-fluoro dolutegravir, is specifically excluded from claim 6.

There is no dispute that bictegravir has three fluorines. Ex. A, D.I. 201 at ¶ 51; Ex. I, D.I. 1 at ¶ 85. Three-fluorine structures are inconsistent with the specific structural recitation in claim 6 of two (and only two) fluorine atoms. The Court should find as a matter of law that claim 6 specifically excludes three fluorines and grant summary judgment of non-infringement to Gilead.

---

better explained as applying a principle of specific exclusion. In those cases, the asserted claim lacked a limitation present in unasserted claims, and the Court held that the doctrine of equivalents could not be used to recapture the subject matter so excluded. *MorphoSys*, 358 F. Supp. 3d at 362 ("Therefore, having claimed only human antibodies in some claims, MorphoSys cannot now argue that those claims should also cover humanized antibodies under the doctrine of equivalents."); *ViiV*, 6 F. Supp. 3d at 473 ("It would be improper to recapture scope that is absent in the asserted claim, yet present in unasserted claims, under the doctrine of equivalents."). Indeed, the *MorphoSys* Court explicitly applied specific exclusion as well as disclosure dedication. 358 F. Supp. 3d at 362–63.

## <u>CONCLUSION</u>

For the above reasons, ViiV's claim 6 of the '385 patent specifically excludes compounds with bicyclic A-rings and compounds with three fluorines, such as Gilead's bictegravir. As application of specific exclusion is a matter of law, the Court should grant summary judgment of non-infringement.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Defendant*
*Gilead Sciences, Inc.*

OF COUNSEL:

Adam K. Mortara
J. Scott McBride
Mark S. Ouweleen
Matthew R. Ford
Nevin M. Gewertz
Tulsi E. Gaonkar
Rebecca T. Horwitz
Madeline W. Lansky
Bartlit Beck LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400

John M. Hughes
Meg E. Fasulo
Bartlit Beck LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
(303) 592-3100

Nao Takada
Takada Legal, P.C.
112-01 Queens Blvd.
Forest Hills, NY 11375
(212) 380-7804

May 22, 2020

## <u>WORD COUNT CERTIFICATION</u>

The undersigned counsel hereby certifies that the foregoing document contains 7,115 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the brief. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.


*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 29, 2020, upon the following in the manner indicated:

| | |
|---|---|
| Michael P. Kelly, Esquire<br>Daniel M. Silver, Esquire<br>Alexandra M. Joyce, Esquire<br>McCarter & English, LLP<br>Renaissance Centre<br>405 North King Street, 8th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| John M. Desmarais, Esquire<br>Justin P.D. Wilcox, Esquire<br>Lindsey E. Miller, Esquire<br>Kyle G. Petrie, Esquire<br>Todd L. Krause, Ph.D.<br>Laurie Stempler, Esquire<br>Julianne M. Thomsen, Ph.D.<br>Thomas J. Derbish, Esquire<br>Alyssa Monsen, Esquire<br>Desmarais LLP<br>230 Park Avenue<br>New York, NY  10169<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Anjali Deshmukh, Esquire<br>Desmarais LLP<br>101 California Street<br>San Francisco, CA  94111<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)